IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOSEPH CAMP,

                Plaintiff,

    v.                                      CASE NO. 11-3128-SAC

SHELDON RICHARDSON, et al.,

                Defendants.

**O R D E R**

Plaintiff initiated this action as a federal pretrial detainee in a Leavenworth, Kansas, detention center (CCA-LVN) operated by the Corrections Corporation of America (CCA), a private corporation. Plaintiff seeks damages on allegations concerning the conditions of his confinement at the CCA-LVN facility. The original complaint named six CCA defendants in their official and individual capacities: Warden Shelton Richardson, Assistant Warden Phillip Valdez, Chief of Unit Management Kenneth Daugherty, Case Manager Julia Dorman, and Corrections Counselor Wayne Bigelow. Plaintiff subsequently amended his complaint to clarify the names of defendants, their administrative titles, their current addresses, and the capacity in which they were being sued.[1] He also named two additional defendants: Assistant

---

[1] Plaintiff's MOTION TO MODIFY AND CLARIFY THE RECORD (Doc. 12) is granted. Plaintiff's modification and clarification of the record also includes his correction of the title of his amended complaint (Doc. 11) as being his first amendment of the complaint, and not a second amended complaint as titled.

Warden Daniel Prado and Case Manager Tammy Perkins. Plaintiff names these two defendants in their official capacity as successors to defendants who either no longer worked at the CCA-LVN facility or now have a different administrative title.

### In Forma Pauperis, 28 U.S.C. § 1915

Plaintiff has paid the initial partial filing fee assessed by the court under 28 U.S.C. § 1915(b)(1), and is granted leave to proceed in forma pauperis. Plaintiff remains obligated to pay the remainder of the $350.00 district court filing fee in this civil action, through payments from his inmate trust fund account as authorized by 28 U.S.C. § 1915(b)(2).

### Screening the Amended Complaint, 28 U.S.C. § 1915A

Because plaintiff is a prisoner as defined by 28 U.S.C. § 1915(h),[2] the court is required to screen the complaint and to dismiss it or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b). Although a complaint filed pro se by a party proceeding in forma pauperis must be given a liberal construction, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), even under this standard a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). Plaintiff bears the

---

[2] 28 U.S.C. § 1915(h) defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentence for, or adjudicated delinquent for violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

burden of alleging "enough facts to state a claim to relief that is *plausible* on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir.2008)(stating and applying *Twombly* standard for dismissing a complaint as stating no claim for relief).  These screening standards apply to plaintiff's amended complaint, as the filing of an amended complaint supersedes that original pleading.

Having considered the amended complaint, the court finds it is subject to being summarily dismissed for the following reasons.

*Factual Background and Claims*

In this action, plaintiff states that he was attacked by his cellmate (Brien LaGault) on May 22, 2011.  Plaintiff describes LaGault as being older and heavier than plaintiff, and as having Hepatitis C, mental health problems, and a history of substance abuse and violent offenses compared to plaintiff's pending nonviolent charges. Plaintiff states he verbally asked Bigelow to be moved to a different cell, but Bigelow never got back to him.

Plaintiff recounts the events then occurring on May 22, 2011. Plaintiff states Bigelow talked to LaGault about plaintiff's request to be moved, and LaGault interpreted that request as "snitching." Plaintiff also states his cleaning of the cell caused LaGault to angrily awaken and call plaintiff his "cell bitch."  Plaintiff states LaGault thereafter attacked plaintiff during the 3:30 count, causing injuries to plaintiff's head, face, and ribs.  LaGault then allowed plaintiff to get up and call for assistance.

Plaintiff states he was taken to medical where his injuries were photographed, and he was then placed in administrative segregation pending an investigation of the assault.  No further medical or mental treatment was provided, and plaintiff states Bigelow and Dorman warned him that requests for such treatment could adversely impact his pending criminal case.

On this set of facts, plaintiff contends Bigelow, Dorman, and Daugherty failed to comply with CCA regulations when plaintiff and LaGault were both classified as "medium" security prisoners,[3] and that this classification error caused plaintiff to be attacked and injured. Plaintiff claims there was no satisfactory investigation by Valdez, Richardson, and Miller of the incident, or any appropriate action taken, particularly where LaGault was never disciplined or placed in segregation.  Citing his continuing mental anguish from the assault, plaintiff further contends Dorman and Bigelow conspired to deprive him medical and mental treatment after the assault.

*Bivens*

This court has jurisdiction under 28 U.S.C. § 1331 over all civil actions "arising under the Constitution or laws of the United States." To proceed in federal court, however, plaintiff must also state a claim for relief or a "cause of action."  *See Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1230-31 (10th Cir.2005)("To bring suit, a plaintiff must also state a claim upon which relief may be granted,

---

[3] Plaintiff states he was classified as a "low" security prisoner at the CCA facility in which he was confined prior to his transfer to CCA-LVN, and contends that "low" classification designation should have continued at CCA-LVN.
   Plaintiff also states LaGault was classified as a "high" security prisoner at the county jail in which LaGault was confined prior to his transfer to CCA-LVN.

what used to be called stating a cause of action.")(citation omitted).

Here, plaintiff argues he is entitled to relief under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotic*, 403 U.S. 388, 395-97 (1971), in which the United States Supreme Court recognized "an implied private right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Correctional Services Corporation v. Malesko*, 534 U.S. 61, 66 (2001). Whereas Bivens involved damages for an alleged Fourth Amendment violation, the Court subsequently "recognized an implied damages remedy under the Due Process Clause of the Fifth Amendment, and the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Id.* at 67 (citing *Davis v. Passman*, 442 U.S. 228 (1979) and *Carlson v. Green*, 446 U.S. 14, 18 (1980)).

The Court, however, has not extended *Bivens* to include a federal cause of action against a private corporate entity such as CCA. *Id*. at 71-74. Likewise, the Supreme Court refused to extend a cause of action under *Bivens* to a prisoner seeking damages "from privately employed personnel working at a privately operated federal prison, where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law." *Minneci v. Pollard,* 132 S.Ct. 617, 626 (2012). *See also Peoples v. CCA Detention Centers,* 422 F.3d 1090, 1108 (10th Cir.2005)(The Tenth Circuit previously held that "under *Malesko,* federal prisoners have no implied right of action for damages against an employee of a privately operated prison under

contract with the United States Marshals Service when state or federal law affords the prisoner an alternative cause of action for damages for the alleged injury."); *Lindsey v. Bowlin,* 557 F.Supp.2d 1225, 1230 (D.Kan.2008)("[A] federal prisoner has no implied right of damages against an employee of a privately operated prison when state or federal law affords an alternate cause of action for the alleged injury.").

*Official Capacity Claims*

Plaintiff's claims against all defendants in their official capacity are to be dismissed as stating no claim for relief. While *Bivens* authorizes a suit for damages against federal officials in their *individual* capacities for alleged violations of the plaintiff's constitutional rights, such an action against federal officials in their *official* capacities would be a claim against the United States and thus barred by sovereign immunity. *See Simmat*, 413 F.3d at 1231 ("a *Bivens* claim lies against the federal official in his individual capacity – not… against officials in their official capacity"); *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002)(doctrine of sovereign immunity precludes a *Bivens* action against the United States or any agency thereof). An official capacity claim "contradicts the very nature of a *Bivens* action. There is no such animal as a *Bivens* suit against a public official tort-feasor in his or her official capacity." *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir.2001).

*Individual Capacity Claims*

As to plaintiff's claims against the defendants in their

6

individual capacity, plaintiff attempts to avoid *Minneci* by arguing the defendants at the CCA-LVN facility should be considered federal actors because the facility displays murals of seals for the Department of Justice and the United States Marshal Service, and because CCA-LVN employees wear star shaped badges inscribed "Deputy United States Marshal."  Plaintiff also reads *Minneci* as leaving open whether the Court would imply a *Bivens* cause of action on the kind of inmate-on-inmate attack at issue in his case.[4]

The court finds little to no merit in either argument, but even if plaintiff could proceed against the individual defendants, the court finds the amended complaint is subject to being summarily dismissed because plaintiff's allegations fail to state a claim upon which relief can be granted.

*8th Amendment Claims*

Where, as in the present case, plaintiff's Eighth Amendment claims are based upon conditions of his confinement, he must demonstrate that the deprivation suffered was "objectively 'sufficiently serious,'" and that each defendant had a "sufficiently

---

[4] The Court found the CCA prisoner's argument - "that there 'may' be similar kinds of Eighth Amendment claims that state tort law does not cover" - not convincing, but stated further:

> Regardless, we concede that we cannot prove a negative or be totally certain that the features of state tort law relevant here will universally prove to be, or remain, as we have described them. Nonetheless, we are certain enough about the shape of present law as applied to the kind of case before us to leave different cases and different state laws to another day. That is to say, we can decide whether to imply a *Bivens* action in a case where an Eighth Amendment claim or state law differs significantly from those at issue here when and if such a case arises. The possibility of such a different future case does not provide sufficient grounds for reaching a different conclusion here.

*Minneci*, 132 S.Ct. at 625-26.

culpable state of mind" or was "deliberate[ly] indifferen[t]" to the inmate's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834 (1991)(quoting *Wilson v. Seiter,* 501 U.S. 294, 297-98, 302-03 (1991)).

### A. Duty to Protect

Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners, but prison officials are not expected to prevent every injury suffered by one prisoner at the hands of another. *Farmer*, 511 U.S. at 833-34. "The failure of a prison official to protect an inmate from attacks by other inmates rises to the level of an Eighth Amendment violation only if the evidence shows defendants acted with 'wanton or obdurate disregard for or deliberate indifference to' the protection of prisoners' lives." *Rider v. Werholtz*, 548 F. Supp. 2d 1188, 1195 (D. Kan.2008)(citing *Harris v. Maynard*, 843 F.2d 414, 416 (10th Cir.1988); *Northington v. Jackson*, 973 F.2d 1518, 1525 (10th Cir.1992)). The test for deliberate indifference has an objective and subjective component. *Id.* Under the objective component, the harm suffered must be sufficiently serious to implicate the Eighth Amendment. *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir.2003). The subjective component is met if a prison official both knows of and disregards an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. "Deliberate indifference requires more than a showing of simple or heightened negligence." *Verdecia*, 327 F.3d at 117 (citations omitted). The same two part "deliberate indifference" standard applies to comparable claims brought by pretrial detainees. *See*

*Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir.1998)("Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims.")(citation omitted).

The court finds the allegations in plaintiff's amended complaint are insufficient to plausibly establish that any individual defendant acted with a knowing disregard to an excessive risk to plaintiff's safety.

It appears plaintiff entered the CCA-LVN facility in January 2012. There is no information as to when plaintiff was assigned to be in a cell with LaGault, when plaintiff voiced his concern to Bigelow and requested a transfer, and when Bigelow talked to LaGault about plaintiff's request. Plaintiff cites the one violent attack, but identifies no other instances or threats of violence while being celled with LaGault. Instead, plaintiff relies on alleged error in defendants' classification of LaGault and himself, arguing the assault would never have taken place if he had been properly classified as a "low" security detainee. Plaintiff also contends defendants' failure to comply with classification provisions and "management alerts" in CCA-LVN regulations constituted deliberate indifference to plaintiff's personal safety.

The court disagrees. The alleged breach of a duty to follow CCA-LVN regulations in this case sounds in negligence at best, which is not actionable under *Bivens*. The showing of deliberate indifference required for a cognizable constitutional claim demands

more.  *See Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir.2002)("To the extent [plaintiff] seeks relief for alleged violations of state statutes and prison regulations, however, he has stated no cognizable claim" for deprivation of a right secured by the Constitution or laws of the United States.)(citations omitted); *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir.1993)(the "failure to adhere to administrative regulations does not equate to a constitutional violation").  "It is not enough to establish that the official should have known of the risk of harm." *Farmer*, 511 U.S. at 837.

Plaintiff's allegations fail to provide a factual basis for plausibly finding that Bigelow deliberately ignored an obvious risk to plaintiff's safety prior to LaGault's attack, or that any supervising CCA-LVN defendant knew that plaintiff's classification and cell assignment made it highly probable that plaintiff would be harmed by LaGault, and disregarded that known risk.  The court thus finds plaintiff's duty-to-protect allegations in his amended complaint present no actionable claim under *Bivens* against any defendant.

B.  Medical

To state a cognizable claim of being denied medical care, a plaintiff must allege omissions or acts sufficiently harmful to suggest deliberate indifference to serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  The two component standard for deliberate indifference applies, requiring a plaintiff to establish both an objective showing of a sufficiently serious pain

or deprivation, and a subjective showing that the offending officials acted with a sufficiently culpable state of mind. *Id*. at 106; *Wilson*, 501 U.S. at 298.

Deliberate indifference may be proven by showing that prison officials intentionally denied, delayed access to or interfered with an inmate's necessary medical care. *Estelle,* 429 U.S. at 104–05. *See also Farmer,* 511 U.S. at 835–37 (prison officials act with deliberate indifference to inmate's health if they know that he faces substantial risk of serious harm, and disregard that risk by failing to take reasonable measures to abate it). Under this standard, plaintiff must show more than negligent or inadvertent failure to provide adequate medical care, and more than a mere difference of opinion with prison medical staff regarding the proper course of treatment. *See Riddle v. Mondragon,* 83 F.3d 1197, 1203 (10th Cir.1996); *Olson v. Stotts,* 9 F.3d 1475, 1477 (10th Cir.1993). The deliberate indifference standard is not satisfied by either negligence or constructive notice. *See Farmer*, 511 U.S. at 835, 841.

A medical need is serious if failure to treat an inmate's condition could result in "further significant injury" or "unnecessary and wanton infliction of pain." *Estelle,* 429 U.S. at 104; *see also Sealock v. Colorado,* 218 F.3d 1205, 1209 (10th Cir.2000) (medical need is "serious" if it has been diagnosed by physician as one requiring treatment or if it is so obvious that even lay person would easily recognize need for doctor's attention). Mere delay in treatment, however, without a showing of harm, does not constitute

a sufficiently serious deprivation of medical care. *See Garrett v. Stratman,* 254 F.3d 946, 950 (10th Cir.2001)(inmate must show he suffered "substantial harm" as result of delay); *Olson,* 9 F.3d at 1477 (same).

In the present case, plaintiff's allegations of being denied necessary medical care are limited to his claim that Bigelow and Dorman conspired to discourage or prevent plaintiff from seeking medical and mental treatment by telling plaintiff it could adversely impact his pending criminal case. This is insufficient to present a colorable claim of constitutional deprivation against either defendant.

Plaintiff states his injuries were not treated after being taken to medical for photographs, but identifies no specific or serious medical need that was denied, and no substantial injury resulting from any delay in medical treatment.[5] Plaintiff's bare allegation that Bigelow and Dorman conspired to discourage him from requesting further treatment is conclusory at best, and any alleged threat of adverse impact on plaintiff's criminal proceeding must be considered in light of the fact that plaintiff was represented by defense counsel. Plaintiff also fails to plausibly establish that defendants' alleged comments thereby caused prevented plaintiff from seeking necessary treatment from medical staff, or that either defendant acted with a culpable disregard to any obvious excessive risk to plaintiff's health

---

[5] Documents submitted by plaintiff as exhibits includes written inmate requests after the assault concerning his eyeglasses which were broken in the assault, and responses indicating replacement lens and glasses were provided.

In his amended complaint filed approximately one year later, plaintiff generally states he currently experiences migraine headaches, nightmares, cold sweats, anxiety, and flashbacks.

or safety.

### Notice and Show Cause Order to Plaintiff

Accordingly, the court directs plaintiff to show cause why the amended complaint should not be dismissed as stating no claim upon which relief can be granted in federal court.  The failure to file a timely response may for result in the amended complaint being dismissed for the reasons stated herein, and without further prior notice.

Plaintiff's second motion for appointment of counsel is denied without prejudice.[6]

IT IS THEREFORE ORDERED that plaintiff's motion for leave to proceed in forma pauperis (Doc. 2) is granted, with payment of the remainder of the $350.00 district court filing fee to proceed as authorized by 28 U.S.C. § 1915(b)(2).

IT IS FURTHER ORDERED that plaintiff's motion to modify and clarify the record (Doc. 12) is granted, and that plaintiff is granted twenty (20) days to show cause why the amended complaint as modified and clarified should not be dismissed as stating no claim for relief.

IT IS FURTHR ORDERED that plaintiff's second motion for

---

[6] The court also notes plaintiff's submission of a MOTION IN OPPOSITION TO SUA SPONTE DISMISSAL, which appears to be a cover to plaintiff's attachment of a pleading titled as PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, all for "in camera inspection."  However, there is no motion for summary judgment before the court, defendants have not even been served or ordered to file a response to the amended complaint, and plaintiff makes no argument for "in camera" consideration of these pro se pleadings.
Federal Rules do not provide for the filing of an opposition to an anticipated summary judgment motion.  Nonetheless, because it appears these pro se documents generally repeat allegations and arguments already presented in the record, given plaintiff's unsupported but express request for "in camera" review, the court notifies plaintiff that neither submitted document will be filed unless plaintiff notifies the court that he wants the open record to include these documents.

appointment of counsel (Doc. 10) is denied without prejudice.

**IT IS SO ORDERED.**

DATED:  This 18th day of March 2013 at Topeka, Kansas.


                              s/ Sam A. Crow
                              SAM A. CROW
                              U.S. Senior District Judge