IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JOSEPH CAMP,

          Plaintiff,

     v.                   CASE NO.  11-3128-SAC

SHELTON RICHARDSON,
et al.,

         Defendants.


<u>MEMORANDUM AND ORDER</u>


In this pro se complaint filed pursuant to *Bivens*,[1] plaintiff seeks money damages for injuries sustained at a privately-run detention center where he was allegedly attacked by his cellmate and thereafter denied medical and mental health treatment. The court previously screened plaintiff's First Amended Complaint (Doc. 11), and entered an Order finding that this action should be summarily dismissed because plaintiff has no cause of action under *Bivens* against the CCA employees. The court further found that plaintiff's allegations, even if cognizable under *Bivens*,[1] failed to state a federal constitutional claim. Plaintiff was given the opportunity to show cause why this action should not be dismissed. He first filed

---

1    *Bivens v. Six Unknown Named Agents of the Federal Bureau*, 403 U.S. 388 (1971). In *Bivens* the United States Supreme Court held that plaintiffs may sue federal officials in their individual capacities for damages for Fourth Amendment violations, even in the absence of an express statutory cause of action analogous to 42 U.S.C. § 1983. *Id.* at 395-97; *see Carlson v. Green*, 446 U.S. 14, 18 (1980)(recognizing a parallel cause of action for Eighth Amendment violations).

an Interlocutory Appeal, which was summarily dismissed (Doc. 18) because no final order had been entered. He then filed a response "to save his suit." To determine whether or not plaintiff has shown good cause, the court has reviewed plaintiff's Response (Doc. 20) and his Amended Complaint (Doc. 10) with attachments, together with his Motion to Modify and Clarify the Record (Doc. 12) and his Memorandum in Opposition to Dismissal, as requested.[2] The court concludes that plaintiff has not shown good cause and dismisses this action without prejudice for failure to state a federal cause of action and failure to state a federal constitutional claim.

## ALLEGATIONS AND CLAIMS

Joseph Camp filed this action in July 2011, while he was a pretrial detainee at the Leavenworth Detention Center, Leavenworth, Kansas, which is operated by Corrections Corporation of America (CCA), a private corporation. He generally asserted jurisdiction under 28 U.S.C. § 1331 and *Bivens* while also listing 42 U.S.C. § 1983, and claimed cruel and unusual punishment along with denial of Due

---

[2]    Some time ago, plaintiff submitted his "Motion in Opposition to Sua Sponte Dismissal" together with a title sheet for "Exhibit One" followed by an 18-page attachment. The attachment was entitled "Plaintiff's Opposition to Defendant's Motion for Summary Judgment," but no summary judgment motion was ever filed. Plaintiff described these materials as anticipatory only and subject to change and requested an "in camera inspection." He was previously informed that neither would be filed unless he notified the court that he wanted the open record to include these documents. He now asks that these documents be placed upon the record, and the clerk is directed to file the motion together with Exhibit One as "Plaintiff's Memorandum in Opposition to Dismissal." In determining this matter, the court has considered these materials.

Process. The following defendants[3] are sued in both their official and individual capacities: Shelton Richardson, Warden; Kenneth Daugherty, Chief of Unit Management; Wayne Bigelow, Corrections Counselor; and Brenda Miller, Unit Manager. The following defendants are sued in their official capacity only: Phillip Valdez, Former Assistant Warden; Tammy Perkins, Case Manager; and Daniel Prado, Assistant Warden. Julia Dorman, Former Unit Manager, is sued in her individual capacity only.[4]

Plaintiff's allegations are repeated in his responsive materials and include the following. He arrived at the Leavenworth CCA in January 2011. On May 22, 2011, he was attacked by his cellmate BL. He suffered injuries to his face, neck, and ribs, and has since suffered migraine headaches, mental anguish and "extreme paranoia." Prior to the attack, BL had been incarcerated for 16 years, had a history of rape/predatory charges, was a "candidate for Armed Career Offender Status" and a "member of a white supremacy gang known as the "Peckerwoods." In addition, BL had "serious mental health

---

3    Plaintiff's Motion to Modify and Clarify the Record (Doc. 12) was previously granted along with the changes therein to the defendant CCA employees and the capacity in which each is sued. The clerk is directed to make these changes on the record.

4    Plaintiff was previously informed that he was barred by sovereign immunity from asserting a *Bivens* action against defendants in their official capacities. The court also notes that plaintiff has alleged no facts establishing that the privately-employed defendants acted as public officials. Furthermore, plaintiff may not sue defendant Assistant Wardens Valdez and Prado or any other defendant based upon their supervisory position. *Rizzo v. Goode*, 423 U.S. 362 (1976); *Georgacarakos v. Nalley*, 356 Fed.Appx. 210, 212 (10th Cir. 2009)(unpublished) (*citing Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

issues," Hepatitis C, and substantial substance abuse problems. Management Alerts on BL included "Health Issues" and "Predatory History." BL had been classified elsewhere as high security, but at the CCA was incorrectly classified as moderate security by defendant Bigelow. Plaintiff on the other hand was a non-violent, much younger and smaller, pretrial detainee awaiting trial on computer fraud charges. His only Management Alert was "Special Skills." Plaintiff had been classified elsewhere as low security but was incorrectly classified as moderate security at the CCA. Plaintiff and BL were not compatible under the criteria in CCA's policy for inmate security classification, which prohibited low custody inmates from being housed with high custody inmates. Defendant Bigelow circumvented CCA policy when he incorrectly classified plaintiff and BL and thereby allowed the attack to occur. Defendant Dorman assigned BL and plaintiff to the same two-man cell. Defendant Dorman was aware of the differing alerts on the two inmates and was deliberately indifferent to plaintiff's safety in that she failed to correct Bigelow's classifications and circumvention of CCA policy. Defendant Daugherty failed to review "security warnings" and designations and allowed reclassification of inmates contrary to CCA policy. Upon learning of BL's history and problems, plaintiff asked defendant Bigelow to move him to another cell "to no avail." Defendant Bigelow was negligent because he failed to respond after

being verbally informed of the "substantial risk that plaintiff could be harmed."[5]  On the day of the attack, plaintiff was cleaning his cell and "accidentally woke" BL.  BL told plaintiff to stop making noise and called him "cell-bitch."  Later that day, defendant Bigelow spoke with BL, after which BL called plaintiff a snitch and referred to plaintiff's request to move.  That afternoon, without provocation, BL attacked plaintiff for several minutes and then allowed him to call for help.  Plaintiff was taken to the Captain's office and reported the incident.  He was taken to the infirmary, and his visible injuries were photographed.  He was then taken to segregation pending an investigation.  BL was not punished for the attack, while plaintiff was punished by placement in segregation.[6]  Plaintiff has been the subject of "extreme retaliation since these events."[7]  Plaintiff told Dorman and Bigelow about his physical and mental suffering after the attack but they conspired to deprive him

---

5    As support for this allegation, plaintiff refers to the first exhibit attached to his original complaint, which is also attached to his Amended Complaint.  It shows "information received from initial meeting" included: "did not put in any request, but asked CC Bigelow once to move and it did not happen."

6    Plaintiff complains that being held in segregation impeded his ability to litigate this case.  However, his exhibits include a letter from the CCA Warden to plaintiff's criminal attorney stating that Mr. Camp was placed in segregation on May 22, 2011, "pending investigation for protective custody status" and was released from segregation on June 9, 2011; was again placed in segregation on September 7, 2011, for another matter and was approved for release 5 days later but refused twice to leave stating he was afraid to go anywhere in CCA.

7    An inmate claiming retaliation must allege specific facts showing that he was retaliated against because of the exercise of his constitutional rights and prove that "but for" the retaliatory motive, the incident to which he refers would not have taken place.  Plaintiff's allegations of retaliation are nothing more than conclusory statements, and are not considered further.  His reference to a docket number in a criminal case provides no factual support.

of medical and mental health treatment by stating that his pursuit of the matter would affect his criminal case. He was not effectively treated for his injuries. Defendants Valdez, Richardson, and Miller failed to investigate plaintiff's grievances and provide a satisfactory resolution, and a cover-up was attempted.[8] This led to stress and unnecessary time in segregation for plaintiff, and showed deliberate indifference to plaintiff's mental health. The day after the attack, plaintiff filed an "Informal Resolution" which along with his "Formal Appeal" was unsatisfactory.[9] Plaintiff alleges that he exhausted his administrative remedies.

Because the incident occurred while plaintiff was a pretrial detainee, he asserts violations under both the Fifth and Eighth Amendments. He seeks compensatory damages in the amount of 1.5 million dollars for pain, suffering, and mental anguish.

**NO CAUSE OF ACTION UNDER BIVENS**

---

[8]    Plaintiff cannot sue prison officials for constitutional violations based on either their decisions on administrative grievances subsequent to the occurrence of alleged constitutional violations or for their failure to follow prison regulations.

[9]    In plaintiff's IR, he stated that his previous verbal request to be moved from the cell was denied and that he had been attacked because his cellmate did not want to be awakened while plaintiff cleaned. He also stated that he had "numerous injuries to his face" and his glasses were broken. Staff response indicates that glass frames had been replaced, and that plaintiff was made a separatee from BL. Amended Complaint (Doc. 11) Exhib. 2. On administrative appeal, plaintiff added his ribs to his injuries and claimed that Mr. Bigelow knew he wanted to move due to "problems of compatibility" and BL's "predisposition to violence."

As previously noted, this court has jurisdiction over actions "arising under the Constitution" pursuant to 28 U.S.C. § 1331, but plaintiff must also show the existence of a remedy by stating a claim for relief or a "cause of action" in federal court. After Mr. Camp filed this action and before his Amended Complaint was filed and screened, the United States Supreme Court decided *Minneci v. Pollard*, 132 S.Ct. 617 (2012). In *Minneci* the Court held:

> where, as here, a federal prisoner seeks damages from privately employed personnel working at a privately operated federal prison, where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law (such as the conduct involving improper medical care at issue here), the prisoner must seek a remedy under state tort law. We cannot imply a Bivens remedy in such a case.

*Id.* at 626. Upon screening the Amended Complaint, the court explained to plaintiff that under *Minneci* he had no cause of action or remedy under *Bivens* against the defendant CCA employees. The court also cited *Peoples v. CCA Detention Centers*, 422 F.3d 1090, 1108 (10th Cir. 2005)(The Tenth Circuit previously held that "under *Malesko*, federal prisoners have no implied right of action for damages against an employee of a privately operated prison under contract with the United States Marshals Service when state or federal law affords the prisoner an alternative cause of action for damages for the alleged injury.") and *Lindsey v. Bowlin*, 557 F.Supp.2d 1225, 1230 (D.Kan. 2008)("[A] federal prisoner has no

implied right of damages against an employee of a privately operated prison when state or federal law affords an alternate cause of action for the alleged injury.").  Recently, the Tenth Circuit has provided additional persuasive reasoning:

> This court has previously stated that "the presence of an alternative cause of action against individual defendants provides sufficient redress such that a *Bivens* cause of action need not be implied." *Peoples v. CCA Det. Ctrs.*, 422 F.3d 1090, 1102 (10th Cir. 2005). This statement was recently reaffirmed by the Supreme Court in *Minneci v. Pollard* . . . .
>
> *Minneci*, as well as our own ruling in *Peoples*, are controlling here. As the basis for his *Bivens* claim, Crosby alleges conduct that would typically fall within a state-law negligence claim.  *Id.* at 625 ("State-law remedies and a potential *Bivens* remedy need not be perfectly congruent."); *Schmidt v. HTG, Inc.*, 265 Kan. 372, 961 P.2d 677, 693 (1998)("'To recover for negligence, the plaintiff must prove the existence of a duty, breach of that duty, injury, and a causal connection between the duty breached and the injury suffered. Whether a duty exists is a question of law.  Whether the duty has been breached is a question of fact.'")(*quoting Honeycutt v. City of Wichita*, 251 Kan. 451, 836 P.2d 1128, 1136 (1992)). Because Crosby has an alternative cause of action against the defendants pursuant to Kansas state law, he is precluded from asserting a *Bivens* action against the defendants in their individual capacities.

*Crosby v. Martin*, 502 Fed.Appx. 733, 735 (10th Cir. 2012).[10]

---

[10]    *See also Razzaq v. CCA*, 2012 WL 966077 (D.Kan. Mar. 21, 2012):

Razzaq makes a claim for physical and emotional harm, as did the prisoner in *Minneci* . . . .  The Court characterized such harms as "a result of aggravated instances of the kind of conduct that state tort law typically forbids."  *Id.* at 624.  The Court specifically noted the existence of general tort duties of reasonable care on prison employees "in every one of the eight States where privately managed secure federal facilities are currently located."  *Id.*  And the Court further characterized the question as "whether, in general, state tort law remedies provide roughly similar incentives for potential

Plaintiff has presented no additional facts, arguments or authority to refute that he has no cause of action under *Bivens* and that his claims in federal court fail under *Minneci*. Mr. Camp filed this action as a federal prisoner and seeks damages from privately-employed personnel who were working at the privately-operated Leavenworth CCA. He asserts that defendants breached their duty to protect him, negligently classified him and his attacker, and failed to provide necessary medical and mental health treatment after the attack. The conduct of defendants described by plaintiff "is of a kind that typically falls within the scope of traditional state tort law." Under these circumstances, *Minneci* controls and plaintiff has no remedy under *Bivens*.

In his Response, Mr. Camp attempts to avoid *Minneci* by "reiterate(ing) his position" that defendants were federal actors. His position remains based upon his having witnessed "employees of CCA" wearing pins resembling badges worn by U.S. Marshals and the display within the CCA of murals of the United States Marshal Service and the United States Department of Justice next to the CCA company logo. He argued in his Exhibit One that defendants were federal actors because there was a direct link between the CCA and the federal

---

defendants to comply with the Eighth Amendment while also providing roughly similar compensation to victims of violations" before concluding that "in practice, the answer to this question is 'yes.'" *Id.* Because of the existence of adequate state tort remedies, Razzaq's claims . . . must be dismissed.

Government and the private parties were performing a government function.

These allegations do not convince the court that the privately employed defendants at the CCA-Leavenworth may be sued as federal actors.  The Supreme Court found in *Minneci* that where a federal prisoner seeks damages from personnel employed by a private firm, and not the government, that "fact—of employment status—makes a critical difference."  *Minneci*, 132 S.Ct. at 623 (*citing Carlson*, 446 U.S. at 25).  They specifically rejected the suggestion by Justice Stevens in his dissenting opinion in *Malesko:*

> namely that a prisoner's suit against a private prison-management firm should fall within Carlson's earlier holding because such a firm, like a federal employee, is a "federal agent."  (Citations omitted).

*Id.* at 623-24.

Plaintiff also argues in his Memorandum that at the time he filed this action he had, or knew of, no alternative remedy and that none of "the different types of alternative remedies would be effective." The Supreme Court held in *Minecci* that the "ability of a prisoner to bring state tort law damages action against private individual defendants means that the prisoner does not "lack effective remedies."  *Id*. at 623 (citing *Malesko*, 534 U.S. at 72).  The Court reasoned that:

> Pollard's Eighth Amendment claim focuses upon a kind of conduct that typically falls within the scope of traditional state tort law.  And in the case of a privately

employed defendant, state tort law provides an "alternative, existing process" capable of protecting the constitutional interests at stake. 551 U.S., at 550, 127 S.Ct. 2588.

*Id.* (*citing Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). They held that they could not infer a remedy under *Bivens* because they believed:

that in the circumstances present here state tort law authorizes adequate alternative damages actions—actions that provide both significant deterrence and compensation.

*Id.* at 620. In *Minecci*, Pollard argued that state tort law did not provide remedies adequate to protect his constitutional interests and that the "vagaries" of state tort law required a federal remedy. The Supreme Court rejected these arguments and held instead that, "State tort law, after all, can help to deter constitutional violations as well as to provide compensation to a violation's victim." *Id.* at 624. The Court framed its inquiry as "whether, in general, state tort law remedies provide roughly similar incentives for potential defendants to comply with the Eighth Amendment while also providing roughly similar compensation to victims of violations." *Id.* at 625. The Court then discussed Pollard's claim and the state law remedies available to him:

Pollard's claim . . . is a claim for physical or related emotional harm suffered as a result of aggravated instances of the kind of conduct that state tort law typically forbids. That claim arose in California, where state tort law provides for ordinary negligence actions, for actions based upon "want of ordinary care or skill," for actions for "negligent failure to diagnose or treat," and for actions based upon the failure of one with a

> custodial duty to care for another to protect that other
> from "'unreasonable risk of physical harm.'" (State law
> citations omitted).  California courts have specifically
> applied this law to jailers, including private operators
> of prisons.  (Citations omitted).
>
> Moreover, California's tort law basically reflects
> general principles of tort law present, as far as we can
> tell, in the law of every State. See Restatement (Second)
> of Torts §§ 314A(4), 320 (1963-1964).

*Id.* at 624-25.  The Court explained that, even if "state tort law
may sometimes prove less generous than would a *Bivens* action," this
fact is not "sufficient basis to determine state law inadequate."
*Id.* at 625 ("State-law remedies and a potential *Bivens* remedy need
not be perfectly congruent," and "federal law as well as state law
contains limitations.")  They also noted that state law may provide
relief where federal law does not.[11]

This court previously informed plaintiff that his remedy for
claims against the CCA employees, if any, was an action in state court
for negligence or other misconduct.  See *Peoples*, 422 F.3d at 1104-
05 (individual CCA defendants owed a duty to protect to plaintiff
that if breached, would impose negligence liability); *Lindsey*, 557
F.Supp.2d at 1225)(Kansas law generally provides an inmate with a
remedy against CCA employees for negligence and for actions amounting
to violations of federal constitutional rights.); *see also Menteer*

---

11    For example, "while prisoner usually cannot bring state-law tort actions
against employees of the Federal Government due to sovereign immunity, they
"ordinarily can bring state law tort actions against employees of a private firm."
*Id.* at 623.

*v. Applebee*, 2008 WL 2649504, *8-*9 (D.Kan. June 27, 2008)(plaintiff's state law negligence claim found to be equally effective, alternative cause of action to *Bivens* claim). In fact, Kansas is another state whose tort law reflects the "general principles of tort law" recognized in *Minneci* and set forth in the (Second) Restatement of Torts §§ 314A(4), 320 (1963-64).[12]

---

12    The Kansas Court of Appeals discussed remedies available in Kansas in *Estate of Belden v. Brown County*, 46 Kan.App.2d 247, 270-74, 261 P.3d 943 (Kan. App. 2011):

> In *Thomas* [*v. Board of Shawnee County Comm'rs*], 40 Kan.App.2d [946] at 956, 198 P.3d 182, [2008], the court adopted Restatement (Second) of Torts § 314A (1964) as an appropriate statement of the standard of care a penal facility owes inmates in its custody. We have evaluated the law in this area and come to the same conclusion. An obligation of reasonable care to inmates arises because they are not at liberty to meet their own needs and, thus, must depend upon those who hold them. The authors of Restatement (Second) of Torts § 314A articulate a sound, measured duty appropriate to that legal relationship.
>
> Other Kansas cases recognize a legally enforceable duty of care derived from the special relationship between a place of incarceration or confinement and the person held. *Adams*, 289 Kan. 577, Syl. ¶ 6, 214 P.3d 1173 (A person having legal custody of an individual holds a special relationship imposing a duty to reasonably control that individual.); *Hesler v. Osawatomie State Hospital*, 266 Kan. 616, 624-25, 971 P.2d 1169 (1999) (citing Restatement [Second] of Torts § 314A regarding special relationships creating duty of care, including taking legal custody of another); . . . ; *Washington v. State*, 17 Kan.App.2d 518, 523-24, 839 P.2d 555, *rev. denied* 252 Kan. 1095 (1992) (A state prison has a duty of reasonable care as outlined in the Restatement [Second] of Torts § 320 to protect an inmate from harm at the hands of another inmate.). Notably, those cases look to the Restatement in fashioning the scope of the duty.
>
> [*Jackson v. City of Kansas City*, 263 Kan. 143, 947 P.2d 31 (Kan. 1997)] is especially instructive . . . . The court specifically cited Restatement (Second) of Torts § 320 as establishing a duty on the part of those taking legal custody of an individual to protect him or her from third persons who reasonably might pose a danger. That section of the Restatement (Second) reflects a specialized application of the more general duty of care owed individuals in legal custody outlined in Restatement (Second) of Torts § 314A. See *Doe Parents No. 1 v. State, Dept. of Educ.*, 100 Hawai'i 34, 79, 58 P.3d 545 (2002)(characterizing Restatement [Second] § 320 as "a particularized

application of [the] rule" set out in Restatement [Second] § 314A);
*Fedie v. Travelodge Intern., Inc.*, 162 Ariz. 263, 265, 782 P.2d 739
(1989) (noting that a special relationship of the type described in
Restatement [Second] § 314A triggers the duty to protect against third
parties outlined in Restatement [Second] § 320). The legal
recognition the Kansas Supreme Court gave Restatement (Second) § 320
depends upon a duty of care owed those in legal custody and, therefore,
tacitly accords similar status to the comparable duty outlined in
Restatement (Second) § 314A. The Court of Appeals decision in
*Washington*, 17 Kan.App.2d at 523-24, 839 P.2d 555, carries the same
import. The court applied Restatement (Second) § 320 as defining a
duty of care due one inmate in circumstances suggesting he was a likely
target for violent retaliation from another inmate.

\* \* \*

Jails and other penal institutions, therefore, stand in a special
relationship with the persons they detain as outlined in Restatement
(Second) of Torts § 314A. And having taken legal custody of those
prisoners in a manner that "deprive[s]" them of "normal opportunities
for protection," such an institution "is under a duty to . . . take
reasonable action to protect them against unreasonable risk of
physical harm." Restatement (Second) of Torts § 314A. . . . Penal
facility employees are obligated to intervene if they know or have
reason to know an inmate is endangered. . . .

The duty outlined in Restatement (Second) § 314A strikes a careful
balance between the inherent difficulties in operating a penal
facility and the recognized public policy in providing a reasonably
stable, safe environment for persons confined in those facilities.
. . .

The absence of blanket tort immunity for penal institutions in the
KTCA indicates a legislative determination that those facilities
should be subject to liability for otherwise actionable negligence.
And it signals a public policy decision that the constitutional floor
precluding intentional and deliberately indifferent mistreatment of
prisoners fails to sufficiently serve societal norms and goals—in
particular, rehabilitation—expected of this state's penal system.
In other words, something more humane and attentive than simply
refraining from constitutionally prohibited abuse is required. Had
the legislature meant to impose no greater duty or obligation than
the constitutional minimum, it would have adopted a specific tort
claim exception in K.S.A. 75-6104 immunizing jails and prisons for
their treatment of inmates. (citation omitted). The imposition of
tort liability also provides a financial incentive for governmental
actors operating jails and prisons to adhere to their duty to
reasonably protect inmates from harm. The Restatement standard
provides an appropriate calibration of that duty.

Using the reasonableness standard of Restatement (Second) Torts § 314A
to define the duty owed prisoners hardly reflects legal pioneering.
Numerous jurisdictions have done so over the past 40 years. (citing
*Joseph v. State*, 26 P.3d 459, 466 & n. 26 (Alaska 2001)(The court notes

14

Plaintiff attempts to argue that his claims are different than in *Minneci*, and that the *Minneci* Court "failed to decide" whether a prisoner could sue for inmate-on-inmate attacks under *Bivens*. However, the Court did not exclude inmate-on-inmate attacks from its reach in *Minneci,* and instead rejected this very issue as an example along with Pollard's general argument that "there 'may' be similar kinds of Eighth Amendment claims that state tort law does not cover:"

> But Pollard does not convincingly show that there are such cases. Compare Brief for Respondent Pollard 32 (questioning the availability of state tort remedies for "prisoners [who] suffer attacks by other inmates, preventable suicides, or the denial of heat, ventilation or movement"), with *Giraldo*, supra, at 248-249, 85 Cal.Rptr.3d, at 384-385 (courts have long held that prison officials must protect, e.g., transgender inmate from foreseeable harm by other inmates), and Restatement (Second) of Torts §§ 314A(4), 320.

*Id*. at 625-26. Here, Mr. Camp's claim of denial of medical treatment is precisely the same type as Pollard's, and plaintiff's claims of failure to protect and negligent classification are claims asserted under the Eighth Amendment that do not differ significantly from

---

Alaska's law regarding the duty owed inmates conforms to "the prevailing view" and cites Restatement (Second) § 314A as reflective of that view.)(other citations omitted).

Those cases do not suggest standards or duties distinguishing between pretrial detainees and those convicted of crimes. *See Bell v. Wolfish*, 441 U.S. 520, 537-40, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). . . .

*Id.; see also Peoples*, 422 F.3d at 1104 (citing *Washington v. State*, 17 Kan.App.2d 518, 839 P.2d 555, 559 (1992) ("prison officials owe a duty of ordinary or reasonable care to safeguard a prisoner in their custody or control from attack by other prisoners.")).

claims for which remedies are available under state law.  Thus, this court finds that plaintiff's claims do not differ significantly from those at issue in *Minneci*.  *Id*. at 626.

Plaintiff complains that he was incorrectly advised by the "contract attorney" at the CCA to file a *Bivens* or a 1983 action, that a law library was not provided for civil cases, and that being in segregation hampered his ability to seek other remedies. However, none of these circumstances changes the fact that plaintiff does not have a cause of action under *Bivens* based on relatively new Supreme Court law.  Plaintiff complains that if his claims amount to negligence, this court delayed until the two year statute of limitations expired and caused "irreparable damage" to his cause. However, *Minnecci* was published in January 2012, and cases with similar holdings were decided years earlier in the Tenth Circuit and this District.  Moreover, plaintiff was informed in the court's order dated March 18, 2013, that his complaint was subject to summary dismissal because he stated no claim under *Bivens*.


**FAILURE TO STATE FACTS TO SUPPORT A FEDERAL CONSTITUTIONAL CLAIM**

In its screening order, this court additionally held that even if plaintiff could proceed under *Bivens*, his allegations failed to state a federal constitutional claim.  The court set forth the standards for a claim under the Eighth Amendment of failure to

protect, and found that plaintiff's allegations were insufficient
to "plausibly state that any individual defendant acted with a
knowing disregard to an excessive risk to plaintiff's safety."  The
court further held that the breach of duty alleged by plaintiff
sounded in negligence at best.  Plaintiff mainly responds by
expressing his belief that he already alleged enough facts in his
Amended Complaint and dismissal is not warranted.[13]  Plaintiff's
claim of failure to protect from this single attack has from the start
been based upon his having made one prior verbal request for a
different cell assignment to one defendant based on his own opinion
that he and BL were improperly classified and housed together.  It
is not based upon any prior threatening behavior or incident of
violence toward him by BL or the reporting of any prior events.  In
his Response, he now alleges that he attempted to move "on numerous
occasions."  However, he does not allege when or through whom any
additional attempts were made.  As Mr. Camp was informed, the
"failure of a prison official to protect an inmate from attacks by
other inmates rises to the level of an Eighth Amendment violation
only if defendant acted with "wanton or obdurate disregard for or
deliberate indifference to" the protection of an inmate's life, and
"deliberate indifference requires more than a showing of simple or

---

13    Plaintiff's corrections are noted.  However, his claim that the court
erroneously stated *Minneci* involved a CCA inmate is not significant.  Pollard was
a federal prisoner at a facility operated by a private company, just like plaintiff,
though the company was the Wackenhut Corrections Corporation.

heightened negligence. Plaintiff has himself referred to defendants' acts as negligent, and has alleged no facts showing a wanton or obdurate disregard for his safety. Plaintiff still fails to provide a factual basis for plausibly finding that any defendant deliberately ignored a serious and obvious risk to plaintiff's safety or knew that plaintiff's classification and cell assignment made it highly probable that he would be attacked by his cellmate.

The court also set forth the standards for a claim of denial of medical treatment under the Eighth Amendment, and found that plaintiff had failed to allege that any defendant acted "not just negligently, but with 'deliberate indifference.'" *Minneci*, at 625 *(citing Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Plaintiff has not alleged any additional facts to establish either the subjective or the objective component of the deliberate indifference standard. He still does not allege facts establishing that any defendant acted with a sufficiently culpable state of mind. And he again fails to adequately describe serious injuries that were either diagnosed by a medical professional at the time of the attack or since then as needing medical care, or so obvious that even a lay person would easily recognize the need for medical attention. In his Response, plaintiff's single more specific allegation is that he continues to have "bad migraine headaches" unless he buys Tylenol from the commissary. This circumstance, which he apparently views

as a failure to provide treatment, is insufficient to state a federal constitutional claim of denial of necessary medical treatment.

Finally, the court notes that plaintiff has stated no claim under 42 U.S.C. § 1983. Generally, to state a claim under § 1983, a plaintiff must allege that the constitutional deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crosby*, 502 Fed.Appx. at 735. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West*, 487 U.S. at 49. All defendants named in this action were employed by a private corporation and were not state actors.

Plaintiff complains that the court has failed to accept the allegations in his Amended Complaint as true and is holding him to a higher standard than that applicable to pro se pleadings by requiring more than "bare allegations." However, the court accepted as true plaintiff's allegations that were factual as opposed to conclusory and was not obliged to accept his "labels and conclusions" or opinions based on those facts. Plaintiff complains that the court is forcing him to provide material that is only available through discovery; however, he has never suggested any relevant material that might have been obtained through discovery.

In summary, the court finds that Mr. Camp has had no remedy under *Bivens* because adequate alternative state law remedies have existed for his claims against individual CCA employees, and that plaintiff has failed to raise any viable federal claim in response to the court's show cause order.  Accordingly, this action is dismissed for failure to state a cause of action and failure to state facts to support a federal constitutional claim.

**IT IS THEREFORE ORDERED** that the record be modified to reflect, in accord with plaintiff's previously granted "Motion to Modify and Clarify the Record" (Doc. 12), that defendants herein and the capacities in which they are sued are as follows: defendants Shelton Richardson, Warden; Kenneth Daugherty, Chief of Unit Management; Wayne Bigelow, Corrections Counselor; and Brenda Miller, Unit Manager are sued in both their official and individual capacities; defendants Phillip Valdez, Former Assistant Warden; Tammy Perkins, Case Manager; and Daniel Prado (formerly FNU LNU 1), Assistant Warden are sued in their official capacity only; and defendant Julia Dorman, Former Unit Manager, is sued in her individual capacity only.

**IT IS FURTHER ORDERED** that plaintiff's request for filing of his prior submissions entitled "Motion In Opposition to Sua Sponte Dismissal" and "Exhibit One" is granted, and that these papers be filed together as of this date as "Plaintiff's Memorandum in Opposition to Dismissal."

**IT IS FURTHER ORDERED** that this action is dismissed and all relief is denied, without prejudice, for failure to state a cause of action against defendants under *Bivens* and for failure to state sufficient facts to support a claim for relief under the Eighth Amendment.

**IT IS SO ORDERED.**

Dated this 11th day of March, 2014, at Topeka, Kansas.

**s/Sam A. Crow**
**U. S. Senior District Judge**